And our last argument today is United States v. Traficante. Ms. Barth, you may proceed. Good morning, Your Honors. May it please the Court. Michelle Barth on behalf of Appellant Mr. Thomas Traficante. I'd like to begin by discussing the District Court's use of relevant conduct to increase Mr. Traficante's criminal history category. We're asking that this Court remand for resentencing because the District Court committed procedural error when it used conduct related to the offense of conviction to support a horizontal increase. Can I maybe, before you do that, I mean, the sentencing judge also described this sentence as both a variance and an upward departure under the guidelines, right? That's correct. And so as a variance, I mean, the judge cited the reasons for the variance, why this would not be a typical case and why an above-guideline sentence would be appropriate. Why isn't that sufficient to save this sentence, regardless of whether he may have gotten it wrong on the departures? Well, one is I'd like to direct the Court to Appendix 66 and A63. The Court specifically said it was using guidelines departure bases for increasing the sentence. So regardless, the District Court is still duty-bound to calculate the guidelines correctly. But he begins the sentencing by saying, I'm talking both about a variance and a departure because I think they apply here. And he ends immediately prior to imposing sentence by saying, the Court imposes a sentence above the guidelines, both describe it as a variance and also departure. So he begins and ends by saying he's doing both. That's right. And because he used both and one of those bases is incorrect, what we're looking at is procedural error. And this Court has found again and again failure to ---- But we've also said many times that if, even if there's error, if the judge makes clear that the sentence imposed would have been the same either way and provides the reasons for the sentence, then it's harmless and we don't need to remand. Well, I don't know that the record is clear on that point, that the sentence would be the same regardless of whether there is procedural error here or not. That's not an argument that it made in its brief. And the circuit has been clear that the sentence would have to be the same if the length of the record supports that conclusion. Had the Court known that it could not use relevant offense conduct as a Chapter 4 departure, it may not have arrived at that particular sentencing guideline range. And we all know that the sentencing guidelines that the judge finds often has an anchoring effect on how it views the other 3553 factors. But of course ---- The relevant conduct in this case, I believe, is the conduct related to the offense of conviction. That would be the pattern of stalking that happened in this case. There's also an argument that the prior incident with Mr. Traficante's high school girlfriend, it was also part of the factual basis. That's the part I didn't understand. Are you arguing that the prior incident is, in fact, relevant conduct in this case, and if so, how? Well, I don't think that the argument that the prior girlfriend is part of the instant offense is the argument that I want to make about that. The argument that I want to make about that is that that relationship is not a proper basis for prior uncharged conduct. And if I could circle back for a moment, even if you found that the sentence would have been the same anyway, going back and correcting Mr. Traficante's incorrect criminal history category would have real impact on him in the future. For example, he's going to be facing a 3-year term of supervised release. In the event that he violates the conditions of his supervised release in some way, one of the things that the district court will look at is Mr. Traficante's criminal sentencing category at the time of the offense, and that will dictate his exposure, or at least advise the judge about what his exposure would be for a subsequent violation. Are you suggesting Simmons doesn't apply? No. I do think that Simmons applies. And you think that even with Simmons? Because you've been focusing on Tropiano instead of Simmons. Yes. But you're saying that Simmons does not allow the judge to do what he did here. It seemed to me that what he did is he ended up by saying he was in criminal history category 1, and based on several pages of discussion, I've tried to recite here in this last little bit, suggests to me that it should be criminal history category 3. It sounds like what you're saying, it seemed to me that he knew that between 1 and 3, there was 2, and he found that 3 was the better approximation of the criminal history of the defendant. Okay. So I think, to me, Tropiano still stands. And Simmons just offers another way that a court can satisfy Tropiano, and that is to provide a logical and transparent methodology. So while the court may have recognized there was a difference between criminal history category 1 and 3, I don't think the reasons are apparent on the record why, say, Mr. Traficante's prior offense conduct with his high school girlfriend would be something that would put him outside of criminal history category 2. And while Tropiano's step-by-step analysis is not required in every case, at least Simmons, you can see a very clear, transparent, and logical methodology. For example, if the court had decided to score that prior offense with Mr. Traficante's high school girlfriend, at most the court would have assigned 3 points, and that was the Simmons methodology. That would put Mr. Traficante in criminal history category 2. The only way that we can bump up to criminal history category 3 is if the district court also considered the relevant offense conduct, which this Court said in Weiser and Hoonerlach that it cannot do. I thought as well what he was saying was not merely this prior episode, but that his concern was that had Mr. Traficante not been stopped by law enforcement, he would have continued to do this and would have kept going forward. And I thought it was the likelihood of recidivism as well that was informing his decision as to the criminal history category. Could he not have gone to criminal history category 3 based on a concern about the likelihood of recidivism? Not in that sense. What the judge did was use 5K2.0. And what the judge should have done, if the court had concerns in that regard, was to use that as a vertical departure rather than a horizontal one. And this Court said that is precisely what we should not do. Weiser and Hoonerlach said you cannot use relevant conduct. The Sentencing Commission and this Court's interpretation is that prior criminal history is what should determine a person's likelihood to recidivate. Offense level is determined by the seriousness of the offense. And so what the judge did is he mixed it up and then double counted both. He departed both horizontally to criminal history categories with a methodology that is not apparent from the record, and he also increased the defendant's offense level for that same conduct. And I think Weiser and Hoonerlach are both very clear that you cannot do that. And this Court, in the way it's fleshed out, that interpretation has been consistent. So circling back to Your Honor's original question, I think that Troppiano still stands. And unless the Court's methodology in arriving at a 4A1.3 criminal history category satisfies the concerns set forth in Troppiano, the record would be insufficient. So Simmons carved out that exception. And here the problem is the Court didn't follow Troppiano or Simmons. And I'm not aware of any other method. You've reserved two minutes. I wanted to, before you sit down, ask you one quick question about the other argument that you made on appeal, which was the risk condition. Oh, sure. Of course. Vague and inconsistent with Bowles. There was a 28J letter from the government indicating that there's since been issued a standing order in the Western District that basically has rescinded that or replaced that. So is that issue now moot? I don't think so. Because what the government is proposing is having this new condition unilaterally imposed without any adversarial testing. And the Federal Rules of Criminal Procedure in due process forbids such an approach. Rule 32H of the Federal Rules of Criminal Procedure contemplates a full adversarial testing of the issues relevant to sentencing. And that's what the Supreme Court requires, too, in Burns v. U.S. 501 U.S. 129 at 135. And, of course, the Federal Rules of Criminal Procedure 32ILC must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence. So at bottom, what we need is notice. And within the meaning of Federal law, that requires a meaningful opportunity to be heard. Do you have any substantive objection to the government's proposal? When you say substantive, you mean to the proposed language? Yes. I think that personal history and characteristics and the quantum at risk that might trigger a violation would be vague. But, I mean, the condition that was imposed by Judge Larimer is now gone. It's not there anymore, right? That's right. Okay. And the standing order has replaced it with something else. That's right. And so it seems to me the argument you've made on appeal is now moot, because your condition is gone, right? My condition is gone, but it's been immediately replaced with another one that faces the same constitutional infirmities, or at least nearly. No, no, no, except this one says if the court determines in consultation with your probation officer that you pose a risk, then the court can effectively change the conditions and make you disclose to the risk person that you're out there. I guess that that condition addresses one of the bull's concerns, which was the judicial oversight of imposing such conditions. But I don't think it is. Well, I mean, the judge can change the conditions at any time, right? But the judge has to make findings. Well, I think that when you're imposing an unnoticed special condition of supervised release, one of the things you have to do is provide notice to the defendant so that the defendant has an opportunity to be heard before such a condition is imposed. And what the government is proposing here is imposing a special supervised condition. You say the government is proposing this. It's not that the judge is. It's in the judge's discretion, is it not, as to whether to impose that condition? Sure. I think that addresses, Your Honor, the bull's concern with the unfettered discretion of the probation officer, which was one of the points on appeal. But what it doesn't address is the continuing vagueness in this condition. Why do you believe that if Judge Larimer is inclined to impose that condition, he won't let you know in advance? Well, it sounds like he already has imposed it without letting us know in advance. At least my reading of the government's 28J letter suggests that that standing order immediately replaces this condition with something new. And Mr. Trafficante hasn't had an opportunity to address that yet. And I just wanted to point out, too, that, you know, talking a judge out of a decision that a judge has already been made, has already made, is a much different proposition than talking a judge out of it to begin with. And that's one of the reasons why due process requires this meaningful opportunity to be heard. And then from a prisoner's point of view. I mean, in other words, if the judge determines that your client is a danger and instructs probation to tell that person who would be at risk about your client, and, in fact, directs your client to tell the person who's at risk about his situation, your client can object to that at any time, right? And be heard. Well, sure. I guess there is an opportunity for a remedy. But that does not answer the question of whether this condition should be imposed in the first place. All right. Well, let's hear from the government now. We still reserve two minutes. So that was bonus time. Ms. Gregory, you may proceed. Good morning. May it please the Court. Catherine Gregory, Assistant U.S. Attorney for the Western District of New York, representing the government in this matter. This is my first appearance before the Court. Your Honor, at the outset, I would just like to address the 28J letter that the government filed on Tuesday, as Your Honor referenced. The standing order in the Western District of New York has replaced the language regarding third-party risk notification in response to this Court's decision in Bowles earlier this year. And it's the government's position, therefore, that a limited remand, as we had noted in our brief, is no longer necessary and that the issue has been resolved. I mean, there are other districts. Well, she doesn't agree to the terms. Why shouldn't she have an opportunity to say something before it's imposed? Well, the two — We don't know. The process normally contemplates a request before something is done. Yes. The two issues that the — that were raised on appeal were that the condition originally directed the discretion to the probation officer, which was incorrect and which we noted in our brief. And that is taken care of by, as Judge Sullivan noted, the new language which states if the court determines, it's up to the discretion of the court. And it's an if. It's not an automatic condition. How do you think this thing will proceed going forward, then, in light of your emphasis on if? Well, it's as any condition would. It's a condition of the supervisory lease, so it would be determined at that time. The second thing that was — At what time is my question. Not until he's out, presumably, right? Correct. The second issue that was raised was the vagueness about the risk. And that also appears to have been rectified by the standing order issued by Judge Geraci, where it defines the risk as a risk of committing further crimes, which is much more specific than the previous condition, which, again, as we noted in our brief, was incorrect. Further crimes against a particular person. So it requires a finding of a risk of criminality directed towards a particular person. Or organization. Yes, Your Honor. Yes. So we believe that a limited remand is no longer necessary. As to the sentence itself, it was both substantively and procedurally reasonable. And I would just note that the sentencing transcript itself is somewhat lengthy. You can tell just from reading it that the judge was quite moved by the extraordinary facts of this case, and that he wasn't simply giving a script. He wasn't doing a mechanistic, formulaic recitation. He was speaking to someone. He was trying to reach the appellant. He was speaking directly to him, often addressing him directly, saying, you could have, you know, you could have done much worse. You might not have been. But that's not a standard for either substantive or procedural reason. No, Your Honor. And I raise that only to note that this is not, it wasn't a script. He did, the judge did adequately and sufficiently. I'll give you that. He was, it was, it was a, you know, difficult moment in court. Yes, it was. And the reason I bring that up is because the judge, you can tell from reading the transcript, that the judge is working his way through both the facts, the exceptional facts, as well as trying to address the. Nobody is disputing that he tried hard. The issue is simply whether it was procedurally reasonable or substantively reasonable. Yes, and it was procedurally reasonable because he connected the factors that he considered with each of the guidelines regarding the departure that he wanted to make. And I'm only bringing up the way that he did that because when you cherry pick a few lines out of the sentencing transcript as a whole, it's easy to say, oh, look, it's confusing. But I just, as one example, the judge starts by talking about the 3553A factors. He goes through the facts and he's speaking to the defendant at that time. And then he says, he cites the extraordinary and exceptional conduct, which is the language. That's all variance talk, right? Right. For those of us in the biz. And so can, if we say that that's enough for a variance, he certainly made his record for a variance. This sentence is justified as a variance. Do we need to even get to the thorny or at least more complicated guidelines issue? I'm sorry. I don't understand that. Well, I'm saying he did it as a variance and he did it as an upward departure, right? And if we affirm on the variance, do we even need to address the guidelines calculation issues that drove the departure finding? I don't think so, Your Honor. And the extent of the departure would, of course, be an abusive discretion standard. I just wanted to note that there were, there was argument in the appellant's brief regarding improper consideration of certain factors, especially with respect to 4A1.3. But, again, I would refer the Court to the transcript where the Court cites the prior similar adult criminal conduct and then immediately references the prior incident with the ex, with a different ex-girlfriend at a different point in time prior to this that was reported to law enforcement and that, unfortunately, nothing came of it. Those facts weren't disputed below. And as the judge is talking about that prior incident, he makes an observation, you know what? There were a lot of crimes here. There were a lot of criminal acts here, ancillary criminal acts, and he goes through them. But he doesn't explicitly tie those other criminal acts that were ancillary to this incident to the 4A1.3. And he then moves on once he's finished talking about that to say, and it seems to me there's a lot of crimes here. And then he goes into the 5K factors. The 5K2.8, which is not an issue on appeal, and the 5K2.0. And this is where the appellant is trying to use the one reference with the word horizontally rather than vertically to say that the judge misapplied that particular section. But this kind of slip of the tongue when the judge is talking back and forth between the 4A1.3 and the 5K2.0, this Court has previously held this year that that kind of slip of the tongue does not render a sentence procedurally unreasonable. That was U.S. v. Vogler, 763 in the Federal Appendix 18. Now ---- Kagan. With respect to the earlier victim, the one whose name really was mentioned at trial but is not the victim in this case, it happened when the defendant, Mr. Traficante, was in high school? That's what is reflected in the record, yes. Is it adult criminal conduct? Yes, I believe so, based on the record. And I don't think that the appellant challenged whether that was prior similar adult conduct below. So that wouldn't be an issue here. The judge, after he talks about the 5K2.0, so he starts with the extraordinary facts. He goes to the 4.1A and then he goes back to the 5K2.0. And he summarizes at the end, all right, criminal history category 3, offense level 20, here's what the sentence is. And the appellant is trying to use the fact that he ended on a 5K2.0 and then 5K3.0 first to say that he confused the two. But again, I would just say that when you read the sentencing transcript as a whole in context, it's clear the judge knew what he was doing, that he considered appropriate factors, and that he applied the guidelines correctly. And I would just note the applicability of Simmons, which is a much more recent case than Tropiano, and which specifically held that the district court is not required to posit each category above the applicable criminal history category and consider whether it adequately reflects the seriousness of the offense, and that that is the more applicable case here. So unless the panel has any further questions. MR. GARRETT. No.  Thank you very much, Ms. Gregory. MS. GREGORY.  MR. GARRETT. And we have two minutes of Ms. Clark. MS. CLARK. Thank you, Your Honor. I don't think that the brief just cherry-picks a few lines. If we look at A64 through A66, this is where the 4A1.3 departure is discussed in some detail. And on this record, the district court always coupled relevant conduct to its 4A1.3 departure. And that improper basis cannot be divorced from the Court's sentencing analysis because it was clearly a basis for its departure. So I also wanted to point out, I don't know what distinction this Court is going to come to, but the client's release date is June 14th of 2021. He's located in New Jersey. If this Court agrees to a remand, we'd like to get him back to the district court as soon as possible. Unless there are further questions, I submit. MR. GARRETT. Thank you both. Very well argued. That concludes our arguments for the day. We have one other case on submission, Wong v. Barr. We'll reserve on that one as well. So I guess we're adjourned. Thanks very much. MS.   Thank you, Mr. Chairman. I'll stand adjourned. MS. NULAND.   Okay. Good job. Thank you. Thank you. Good job. Thank you.